Dean A. Rocco (SBN 210481)
 *dean.rocco@wilsonelser.com*
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: 213.443.5100
Facsimile: 213.443.5101

Attorneys for Plaintiff,
Robert Payne

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Robert Payne, an Individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| ADP, Inc., a Delaware Corporation, | |
| Defendant. | |

Plaintiff Robert Payne ("Payne") hereby brings this complaint against Defendant ADP, Inc. ("ADP") as follows:

### INTRODUCTION

1.      Payne resided in and worked for ADP in California from the start of his employment in January 2012 through his resignation in July 2021.

2.      California law prohibits employers from requiring employees to enter agreements whereby they are restrained from engaging in a lawful profession, trade or business of any kind and regards such agreements as unreasonable restraints on trade and against public policy.  Cal. Bus. & Prof. Code §§16600 and 17200. California law also prohibits employers from requiring employees to enter agreements requiring them to adjudicate their disputes outside of California or

1

1    otherwise deprive them of the substantive protection of California law.  Cal. Lab.

2    Code §925.

3        3.    In connection with his employment, ADP required Payne to enter into

4    restrictive covenant agreements containing non-compete and non-solicitation

5    provisions restraining his ability to engage in lawful business after his employment

6    with ADP ended.  Those same agreements also contained provisions subjecting any

7    disputes to New Jersey venue and New Jersey law.

8        4.    Unlike California's statutes, which deem such clauses void as a matter

9    of law, New Jersey has no statutory prohibition on the use of non-compete

10   agreements. To the contrary, New Jersey case law permits New Jersey Courts to

11   enforce a non-complete "if it simply protects the legitimate interests of the employer,

12   imposes no undue hardship on the employee and is not injurious to the public." *Maw*

13   *v. Advanced Clinical Communications, Inc.* (2004) 179 N.J. 439, 447; *see also,*

14   *Community Hospital Group, Inc. v. More* (2005) 183 N.J. 36, 41-43.

15       5.    Without the relief requested in this Complaint, ADP will use these

16   contractual provisions to haul Payne into Court in New Jersey and ask a New Jersey

17   Court to use New Jersey law to enforce what would otherwise be a void non-compete

18   clause arising out of Payne's employment in California; ADP has done so in

19   numerous other instances with other former employees.

20       6.    As is more fully set forth herein, the employment agreements at bar

21   meet the requirements of California Labor Code §925, and Payne is therefore

22   entitled to injunctive relief and reasonable attorney's fees for enforcing his rights

23   under Section 925 to invalidate the choice of law and venue provisions in those

24   agreements.  In addition, ADP's attempts to restrict Payne's future employment

25   efforts through void and unenforceable non-compete and non-solicitation

26   agreements entitle Payne to declaratory and injunctive relief and recovery of his

27   reasonable attorney's fees.  Cal. Bus. & Prof. Code §§16600 and 17200; *AMN*

28   *Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th (2018).

1

## THE PARTIES

2      7.     Payne is now and was at all relevant times an Individual residing in

3  Huntington Beach, California.  Payne lived and worked in California during the

4  entirety of his employment with ADP.

5      8.     ADP is a Delaware Corporation.  ADP identifies its principal place of

6  business as being located in Roseland, New Jersey and it operates out of offices and

7  employs individuals throughout the country.

8

## JURISDICTION AND VENUE

9      9.     This is an action for *inter alia* declaratory relief pursuant to 28 U.S.C.

10  § 2201 and Rule 57 of the Federal Rules of Civil Procedure to resolve an actual

11  controversy between Payne and ADP as set forth herein.  This Court has jurisdiction

12  over the subject matter of this action pursuant to 28 U.S.C § 1332, because there is

13  complete diversity of citizenship between Payne, on one hand, and ADP, on the

14  other, and there is more than $75,000 in controversy.  The amount in controversy

15  exceeds $75,000, exclusive of interest and costs, given Payne's salary, benefits and

16  earning capacity exceed $75,000.  Payne's attorney's fees, which are recoverable

17  under California law for prosecuting this action and defeating ADP's efforts to

18  enforce the underlying agreements, will exceed $75,000.

19      10.    This Court has personal jurisdiction over ADP as it is now and was at

20  all relevant times doing business in the State of California in the Counties of Los

21  Angeles and Orange, including the business dealings asserted in this action.

22      11.    Venue is proper pursuant to 28 U.S.C. § 1391 because the action is

23  brought in a judicial district in California where ADP is now and was at all relevant

24  times doing business and a substantial part of the events or omissions giving rise to

25  the claims occurred in this judicial district.

26

## FACTUAL BACKGROUND

27      12.    Payne began working for ADP in or about January 2012 as a Sales

28  Representative.  He held this position, which was also referred to as a "District

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Manager," throughout his employment.

13.     Prior to beginning his employment with ADP, Payne signed a Sales Representative Agreement in December 2011 (attached hereto as **Exhibit A**).  The Sales Representative Agreement contained a Non-Solicitation, Non-Disclosure, Non-Use and Non-Hire provision.  The Sales Representative Agreement provided it was to be "construed and interpreted in accordance with the laws of the State of New Jersey…applicable to contracts made and to be performed entirely within such State;" it also stated the "courts of New Jersey and the United States District Court for New Jersey shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with [the Sales Representative Agreement]."

14.     At the same time Payne signed the Sales Representative Agreement, he also signed a Non-Disclosure Agreement (attached hereto as **Exhibit B**).  The Non-Disclosure Agreement contained similarly worded non-solicitation and non-disclosure provisions as the Sales Representative Agreement.  It also contained a similarly worded choice of law provision stating the agreement "shall be governed by and construed in accordance with, the laws of the State of New Jersey applicable to contacts made and to be performed entirely within such State;" however, the Non-Disclosure Agreement did not contain a choice of venue provision.

15.     In or about September 2014, ADP required Payne to sign a Restrictive Covenant Agreement in order to receive certain stock compensation (the "2014 RSA")(attached hereto as **Exhibit C**).  The 2014 RSA contained non-compete and non-solicitation provisions preventing Payne from *inter alia* holding employment with a competitor of ADP for 12 months after his employment ended.  The 2014 RSA also contained a "Choice Of Law, Venue and Jurisdiction" clause stating the agreement would be governed by the laws of the State of New Jersey and requiring Payne (but not ADP) to bring challenges in state or federal court in New Jersey.  The 2014 RSA specified it was made "in consideration of [Payne's] initial or continuing

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

employment with ADP" and was "meant to supplement" any prior agreements containing "the same or similar covenants."

16.    ADP presented Payne with a series of similarly worded restrictive covenant agreements connected to Payne's ongoing employment and receipt of stock compensation in subsequent years.  This included restrictive covenant agreements Payne was required to sign in September 2016 (the "2016 RSA") (attached hereto as **Exhibit D**), October 2017 (the "2017 RSA") (attached hereto as **Exhibit E**) and September 2018 (the "2018 RSA") (attached hereto was **Exhibit F**).

17.    The last such agreement ADP required Payne to sign in connection with his ongoing employment and receipt of stock compensation was a restrictive covenant agreement Payne signed on or about April 26, 2021 (the "2021 RSA") (attached hereto as **Exhibit G**). The 2021 RSA provided, in pertinent part:

**RESTRICTIVE COVENANT AGREEMENT**

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP"), as an employee who enjoys substantial compensation and benefits from ADP, including participation in its 2018 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP.

…

**NOW, THEREFORE,** in consideration of my continuing employment, my participation in the 2018 Omnibus Award Plan and the receipt by me of valuable stock in ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, the mutual benefits conferred here, and for good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge, I

5

agree as follows:

…

4. **Non-Competition**. I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business[1] anywhere in the Territory[2] where I (i) will provide the same or similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information[3]

---

[1]    Competing Business is defined to mean "any individual (including [Payne]), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which [Payne has] worked or to which [Payne has] been exposed during the last two years of [his] employment with ADP (regardless of whether [he] worked only for a particular segment of that part of the business in which [he] worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service)."

[2]    Territory is defined to mean "the geographic area where [Payne] worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of [his] employment with ADP."

[3]    Confidential Information is broadly defined to mean "information, or any compilation of information, known or possessed by [Payne] because of [his] employment at ADP that is created, compiled, received, or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or

6

or trade secrets.   However, after the voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**5.    Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors**.

**a. Clients**: I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client[4], for the purpose of selling products or services

---

agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, confidential personnel information, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information. Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential. Confidential Information does not need to be marked in any way to identify it as Confidential Information and does not lose its status as Confidential Information because similar information may be so marked while other Confidential Information is not. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through [Payne's] act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets."

[4]    Client is defined to mean "any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in

7

that compete with the Business of ADP: (i) whom I have solicited or contacted on behalf of ADP within the two (2) year period prior to the termination of my employment with ADP, or (ii) about whom I have learned or been provided any confidential, proprietary or trade secret information during my employment with ADP.

**b.   Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Business Partner[5]: (i) whom I have solicited or contacted on behalf of ADP within the two (2) year period prior to the termination of my employment with ADP, or (ii) about whom I have learned or been provided any confidential, proprietary or trade secret information during my employment with ADP.

**c.   Vendors:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or

---

connection with the Business of ADP within the one (1) year period prior to [Payne's] voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom [Payne has] solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to [his] voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom [Payne has] any Confidential Information or trade secret information."

[5]     Business Partner is defined to mean "any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral sources or partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients). Business Partners under this Agreement are not limited to individuals or entities that have exclusive relationships and/or contractual relationships with ADP."

for no cause, I will not induce or encourage or attempt to induce or encourage any Vendor[6] to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**6.   Non-Solicitation of Employees.**  I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date. This restriction shall only apply to ADP employees located within the United States of America.

…

**10. Choice of Law, Venue, and Jurisdiction.** To the extent permitted by the law of the state in which I reside, the interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles. I agree that, to the extent permitted by the law of the state in which I reside, any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement may be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

…

---

[6]    Vendor is defined to mean "any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

15. **Entire Agreement and Validity of Terms**. I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both Parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

18.     At the time Payne executed the Sales Representative Agreement, Non-Disclosure Agreement, 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA, he resided and worked in California.

19.     Payne was not represented by legal counsel in negotiating any part of the Sales Representative Agreement, Non-Disclosure Agreement, 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA or 2021 RSA.

20.     The 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA were presented to Payne as non-negotiable prerequisites to receiving compensation in the form of stock options.

21.     Throughout his employment with ADP, Payne resided in and worked in California.

22.     Payne gave notice of his intention to resign ADP on July 12, 2021. At the time of his resignation, Payne informed ADP he was going to work for Ceridian.

23.     While Payne was not aware of it at the time, ADP accepted Payne's resignation effective immediately and terminated him effective July 12, 2021. Despite the fact Payne was terminated from ADP, ADP's management continued to contact Payne through July 14, 2021 to request his assistance in transitioning open

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

opportunities to other sales representatives and contacting existing clients to discuss his transition.  ADP did not tender Payne his final paycheck for earnings until July 23, 2021, and that paycheck did not include any pay for July 13 or 14, 2021.

24.   On July 19, 2021, Payne started work for Ceridian under the title of Account Executive – Major 2.

25.   Nearly eight months after his resignation, on March 7, 2022, ADP sent Payne a letter citing to the Sales Representative Agreement, Non-Disclosure Agreement, 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA and concluding he could "not compete with ADP in the same Territory," could "not solicit ADP clients, prospects or referral sources with which [he] dealt while employed by ADP," could "not use or disclose ADP's Confidential Information," and could "not solicit, assist, or encourage ADP associates to leave ADP."  The letter likewise outlined "improper activities" that, according to ADP, would include "competing with ADP in the same Territory, soliciting ADP's employees, clients, prospective clients, business partners or referral sources, or disclosing or using ADP Confidential Information."

26.   On March 17, 2022, Payne responded to ADP's March 7, 2022 letter. In the communication, Payne pointed out the non-compete, choice of law and choice of venue provisions cited in the letter violated California law.  Payne elected to void the choice of law and venue provisions consistent with California Labor Code, Section 925(b).

27.   Payne is informed believes and thereon states ADP has sent similar letters to other former ADP employees and sued former ADP employees in New Jersey alleging breaches of the very same type and kinds of agreements in efforts to prevent those former employees from working for other companies in California.

## FIRST CLAIM FOR RELIEF

## DECLARATORY RELIEF

28.   Payne hereby incorporates by reference and re-alleges each of the

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

foregoing allegations.

29.    An actual, present, and justiciable controversy has arisen and now exists between Payne and ADP concerning the choice of law, exclusive jurisdiction, non-compete and non-solicitation provisions of employment agreements. See, 28 U.S.C. §§ 2201, et seq.; Fed. R. Civ. P. 57.

30.    California Business & Professions Code §16600 provides that, absent an express exception not present in this case, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

31.    California Labor Code § 925 states as follows:

   (a)  An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

      (1)  Require the employee to adjudicate outside of California a claim arising in California.

      (2)  Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

   (b)  Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California, and California law shall govern the dispute.

   (c)  In addition to injunctive relief and any other remedies available, a Court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.

32.    Payne is a citizen of California who lived and worked in California for ADP and was required to execute the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA as a condition of his ongoing employment and a non-negotiable prerequisite to receiving certain compensation.  Payne was not represented by counsel in connection with the negotiation of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

33.     The 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA represent a series of nearly identically-worded agreements wherein each subsequent agreement supplements the preceding agreements between Payne and ADP related to the same or similar non-compete, non-solicitation, choice of law and choice of venue provisions. *Midwest Motor Supply Co. v. Sup. Ct.* (Cal. App. 1st Dist. Oct. 28, 2020), 270 Cal. Rptr. 3d 683, 56 Cal. App. 5th 702, 2020 Cal. App. LEXIS 1014, [holding a forum-selection clause is voidable in agreements entered before Section 925's effective date of January 1, 2017 where those agreements are modified after that effective date].

34.     Under California law, the non-compete and non-solicitation provisions within the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA are void and unenforceable.  Cal. Bus. & Prof. Code § 16600.

35.     The collective aim of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA is to utilize Courts in the State of New Jersey to apply New Jersey law to subject Payne to non-compete and non-solicitation obligations that would otherwise be void and unenforceable under California law.  Indeed, ADP's March 7, 2022 letter to Payne makes clear its position that he is subject to these various non-compete and non-solicitation provisions notwithstanding California's prohibition of the same.  And, as it has done with other former employees, ADP will use these provisions to haul Payne into Court in New Jersey and ask a New Jersey Court to use New Jersey law to enforce what would otherwise be a void non-compete clause arising out of Payne's employment in California.

36.     ADP cannot effect this scheme in light of Labor Code §925's prohibition on choice of venue and law clauses and California's interest in enforcing its public policy against non-competes. *Application Group v. Hunger Group* (1998) 61 Cal.App.4th 881; *Davis v. Advanced Care Techs., Inc.* (E.D. Cal. Aug. 8, 2007) 2007 WL 2288298, at *7; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009)].

37.     Payne informed ADP of his election to void these terms on March 17,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2022.

38.     Pursuant to California Labor Code §925, this dispute "shall be adjudicated in California and California law shall govern the dispute." Cal. Lab. Code § 925(b).

39.     Unless this Court declares California is the proper forum and California law governs this dispute, ADP will proceed with steps to further interfere with Payne's right to continue with gainful employment with his new employer, Ceridian, including instituting litigation in New Jersey.

40.     Payne therefore seeks a judicial declaration and judgment as prayed for herein.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF LABOR CODE §925

41.     Payne hereby incorporates by reference and re-alleges each of the foregoing allegations.

42.     California Labor Code §925 states:

    (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

        (1) Require the employee to adjudicate outside of California a claim arising in California.

        (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

    (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California, and California law shall govern the dispute.

    (c) In addition to injunctive relief and any other remedies available, a Court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.

43.     Payne is a citizen of California who lived and worked in California for

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ADP and was required to execute the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA as part of his continuing employment and a prerequisite to receiving certain compensation.  Payne was not represented by counsel in connection with the negotiation of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA.

44.    The 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA represent a series of nearly identically-worded agreements wherein each subsequent agreement supplements the preceding agreements between Payne and ADP related to the same or similar non-compete, non-solicitation, choice of law and choice of venue provisions.  *Midwest Motor Supply Co. v. Sup. Ct.* (Cal. App. 1st Dist. Oct. 28, 2020), 270 Cal. Rptr. 3d 683, 56 Cal. App. 5th 702, 2020 Cal. App. LEXIS 1014, [holding a forum-selection clause is voidable in agreements entered before Section 925's effective date of January 1, 2017 where those agreements are modified after that effective date].

45.    The collective aim of these agreements is to subject Payne to unlawful non-compete and non-solicitation obligations while simultaneously requiring him to consent to the application of New Jersey law in a Court in the State of New Jersey to resolve any disputes over the same.  As it has done with other former employees, ADP will use these provisions to haul Payne into Court in New Jersey and ask a New Jersey Court to use New Jersey law to enforce what would otherwise be a void non-compete clause arising out of Payne's employment in California.

46.    Payne informed ADP of his election to void these terms on March 17, 2022.

47.    Pursuant to California Labor Code §925, this "matter shall be adjudicated in California and California law shall govern the dispute." Cal. Lab. Code § 925(b).

48.    Payne seeks injunctive relief to enjoin ADP from enforcing the void choice of law and jurisdiction provisions of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA, as well as his reasonable attorney's fees as authorized by

statute.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF BUSINESS & PROFESSIONS CODE §17200

49.     Payne hereby incorporates by reference and re-alleges each of the foregoing allegations.

50.     California Business and Professions Code §17200 prohibits unfair business practices by employers, including but not limited to, employment contracts that violate Business and Professions Code §16600 and California Labor Code §925.

51.     California Business and Professions Code § 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Employee non-competition and non-solicitation agreements have consistently been invalidated under Section 16600 as unreasonable restraints on trade and against public policy.

52.     California Labor Code §925 prohibits employers from requiring employees who primarily reside and work in the State of California to agree, as a condition of employment, to provisions that would require employees to adjudicate claims arising in California outside of California or depriving employees of the substantive protection of California law with respect to a controversy arising in California.

53.     The 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA seek to impose non-competition and non-solicitation obligations on Payne which would restrain his ability to engage in a lawful profession, trade or business.

54.     The 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA seek to impose choice of venue and choice of law provisions on Payne which would require him to adjudicate disputes over the non-compete and non-solicitation provisions of said agreements in New Jersey and would deprive Payne of the substantive protections of California law prohibiting such provisions by applying

16

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

New Jersey law.

55.     Payne has suffered an injury in fact as a result of ADP's unfair and unlawful conduct in requiring him to sign these agreements as a condition of employment and prerequisite to receiving compensation and subsequently asserting the provisions of said agreements to interfere with Payne's current employment with Ceridian.

56.     ADP's conduct towards Payne, which has been taken towards other ADP employees in California, constitutes an unfair and unlawful business practice in violation of Business and Professions Code § 17200 and must be restrained.

57.     Payne seeks a determination that the non-compete and non-solicitation provisions the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA are void and unenforceable under California Business and Professions Code §16600 and the choice of venue and law provisions of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA are void and unenforceable under California Labor Code §925. Payne also seeks preliminary and permanent injunctive relief prohibiting ADP from any further attempts to enforce these provisions, as well as reasonable attorney's fees as authorized by statute.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Robert Payne prays for judgment against Defendant ADP, Inc. as follows:

1.     For a judicial declaration that the choice of law and jurisdiction provisions in the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA are void under California Labor Code §925, and that any claim arising out of the provisions of the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA shall be adjudicated in California and California law shall govern the dispute;

2.     For a judicial declaration that the non-compete and non-solicitation provisions in the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA are void and unenforceable under California Business and Professions Code §16600;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

3. For a judicial declaration that the non-compete, non-solicitation and choice of venue and law provisions in the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA constitute an unlawful and unfair business practice in violation of California Business & Professions Code §17200;

4. For a judicial declaration that Defendant ADP, Inc, is prohibited from attempting to enforce the non-compete, non-solicitation and choice of venue and law provisions in the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA.

5. For a judicial declaration that Defendant ADP, Inc is prohibited from engaging in any conduct which attempts to restrict Plaintiff Robert Payne's work, business or right to earn a living including, without limitation, threatening or instituting legal action pursuant to the void and unenforceable non-compete or non-solicitation provisions within the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA or stating or implying that Plaintiff Robert Payne is bound by or violated the void and unenforceable non-compete or non-solicitation provisions within the 2014 RSA, 2016 RSA, 2017 RSA, 2018 RSA and 2021 RSA.

6. For preliminary and permanent injunctive relief;

7. For restitution in an amount to be proven at trial;

8. For costs of suit incurred herein;

9. For reasonable attorney's fees as authorized by California Labor Code §925; and

10. For such other and further relief as the Court deems just and proper.

Dated: March 17, 2022     WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By:   /s/ *Dean A. Rocco*
      Dean A. Rocco

      Attorneys for Plaintiff
      Robert Payne

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**EXHIBIT A**

## SALES REPRESENTATIVE'S AGREEMENT

**AGREEMENT** between **Automatic Data Processing, Inc.,** a Delaware corporation, or one of its divisions, subsidiaries or affiliates (collectively, the "**Company**") with offices at One ADP Boulevard, Roseland, New Jersey 07068, and the employee agreeing to the terms hereof ("**Employee**").

In consideration of the covenants and agreements contained herein, the Company and Employee agree as follows:

**1.      NATURE OF SERVICES.** The Company hereby employs Employee, and Employee accepts employment with the Company, as a Sales Representative. Employee shall devote Employee's best efforts and entire business time to the performance of Employee's duties and responsibilities hereunder. Employee agrees that Employee has read or will immediately read the Company's Code of Business Conduct and Ethics and the Employee will conduct himself or herself in accordance with that and all other Company policies throughout Employee's employment with the Company. Employee understands that the Company is committed to ethical behavior in business and Employee agrees that Employee will strictly adhere to the highest standards of ethics at all times when representing the Company.

**2.      COMPENSATION.** Employee's compensation as a Sales Representative of the Company is as set forth in the Sales Compensation Plan which may be amended at any time at ADP's discretion.

**3.      OTHER EMPLOYEE BENEFITS.** Employee shall be eligible to participate in any group health benefits, life insurance, stock purchase, vacation and other employee benefit plans in accordance with the terms and conditions of those plans.

**4.      NON-SOLICITATION, NON-DISCLOSURE, NON-USE AND NON-HIRE.**

(a) Employee agrees that during the period commencing the date Employee becomes an employee of the Company and ending one year after the date Employee ceases to be an employee of the Company for any reason whatsoever (the "Non-Solicitation Period"), Employee shall not, on Employee's behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (a "Person"), directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client, bona fide prospective client or marketing partner of the Company before the date Employee ceases to be an Employee of the Company (the "Termination Date") that (i) was located in any territory Employee managed or to which Employee was assigned or covered during the two-year period prior to the Termination Date and/or (ii) Employee was assigned, managed and/or had knowledge of, contact or involvement with during the two-year period prior to the Termination Date, to sell, license or lease any software, product or service competitive or potentially competitive with any software, product or service sold, licensed, leased, provided or under development by the Company during the two-year period prior to the Termination Date, provided that the restrictions set forth in this paragraph shall only apply to clients, bona fide prospective clients or marketing partners of businesses of the Company with which the Employee was involved or exposed.

(b) During and after Employee's employment with the Company, Employee will not disclose to any Person any business methods, procedures, pricing and marketing structure and strategy, programs, forms, confidential information, trade secrets, the names and addresses of current clients, former clients and prospective clients of the Company, or other data and information relating to the Company, its vendors, licensors, marketing partners or clients, learned by Employee at any time during Employee's employment with the Company (the "Information"). Upon termination of Employee's employment with the Company, Employee will return all copies of all materials which belong to the Company (whether or not such materials were prepared by the Company) and which are in Employee's possession or over which Employee exercises any control.

(c) Employee will not, during the Non-Solicitation Period, except in the course of fulfillment of Employee's duties as an employee of the Company, use or act upon in any way, directly or indirectly, any information which became known to Employee during the course of Employee's employment with the Company concerning the identity or business activity of any current clients, former clients, prospective clients and/or marketing partners of the Company.

(d) During the Non-Solicitation Period, Employee will not, directly or indirectly, hire, solicit, or encourage to leave the Company's employ any employee of the Company, or solicit, hire or contract with any former employee of the Company within one year after the date such person ceases to be an employee of the Company.

(e) Employee agrees that a violation of the foregoing covenants not to solicit, not to disclose, not to use and not to hire or any provisions thereof will cause irreparable injury to the Company. Accordingly, the Company shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining Employee from doing or continuing to do any such act.

(f) For the purposes of this Agreement, the term "client" and "prospective client" shall include without limitation any entity to or for whom the Company provides or proposes to provide, as applicable, products or services either directly or indirectly, whether as a

                                                                                 © 2011 Automatic Data Processing, Inc.

vendor, subcontractor to another vendor or otherwise, whether or not privity of contract exists between the Company and such entity.

© 2011 Automatic Data Processing, Inc.

**5.    PATENTS AND OTHER DEVELOPMENTS.** Employee understands and acknowledges that the Company shall have exclusive rights to anything relating to its actual or prospective business which Employee conceives or works on while employed by the Company. Accordingly, Employee:

(a)  will promptly and fully disclose all such items to the Company and will not disclose such items to any other person or entity (other than employees of the Company authorized to review such information) without the Company's prior consent;

(b)  will maintain on the Company's behalf and surrender to the Company upon termination of the Employee's employment with the Company appropriate written records regarding all such items;

(c)  will, but without personal expense, fully cooperate with the Company, execute all papers and perform all acts requested by the Company to establish, confirm or protect its exclusive rights in such items or to enable it to transfer title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

(d)  will, but without personal expense, provide such information and true testimony as the Company may request regarding such items, including, without limitation, items which Employee neither conceived not worked on but regarding which employee has knowledge because of Employee's employment by the Company;

(e)  hereby assigns to the Company, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

(f)  states that the only such items in which Employee personally holds or claims an interest, and which are not subject to this Agreement, are listed on the Ownership Schedule attached hereto. The absence of such an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

**6.    AMENDMENTS: TERMINATION.**

(a)  The Company reserves the right to amend or modify this Agreement or the Sales Compensation Plan at any time after the date hereof.

(b)  Notwithstanding the foregoing, Employee understands and agrees that Employee is employed by the Company on an at-will basis. As an at-will employee, Employee understands that either the Company or Employee can terminate the employment relationship at any time for any reason, with or without advance notice and with or without cause. Employee further understands that, although over the course of Employee's employment, other terms and conditions of Employee's employment may change, the at-will term of Employee's employment will not change. Employee understands that no one other than the Chief Executive Officer of the Company may enter into any agreement with Employee contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

**7.    GOVERNING LAW.** This Agreement shall be construed and interpreted in accordance with the laws of the State of New Jersey (where the Company's principal executive offices are located) applicable to contracts made and to be performed entirely within such State. The courts of New Jersey and the United States District Court for New Jersey shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with this Agreement. A summons or complaint in any such action or proceeding may be served by mail in accordance with Paragraph 8 below.

**8.    NOTICES.** All notices shall be sent to the parties by certified or registered mail at the addresses set forth above or to any changed address which may be given in writing hereafter. All notices to the Company shall include a copy to the Company at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

**9.    SEPARABILITY.** If any provision of this Agreement (including, but not limited to, any provision set forth in Paragraphs 4 and 5 above), or any portion thereof, is held to be invalid or unenforceable, the balance of the Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance it shall nevertheless remain applicable to all other persons and circumstances.

**10.    TRANSFER OF EMPLOYMENT.** The parties recognize that Employee may be employed in offices of the Company other than the one in which Employee is currently employed hereunder. Accordingly, the parties agree that whenever any event occurs affecting their respective rights, duties, or obligations hereunder, the member of the Company by which Employee is employed at the time such event occurs shall be deemed to be the "Company" for all purposes of this Agreement.

**11.    HEADINGS.** The headings in this Agreement are solely for convenience of reference and shall not affect this Agreement's interpretation.

**12.    ACKNOWLEDGMENTS.** Employee acknowledges that the Information is confidential and proprietary information belonging to the Company and that the use or disclosure of the Information except in connection with the Employee's employment with the Company could reduce that the Company's competitive advantage or otherwise commercially damage the Company. Employee further acknowledges that the terms of this Agreement are reasonable and that Employee has had a reasonable opportunity to consult with an attorney before signing this Agreement.

09-11                                                                                             © 2011 Automatic Data Processing, Inc.

© 2011 Automatic Data Processing, Inc.

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date agreed to (whether electronically or otherwise) by Employee.

AUTOMATIC DATA PROCESSING, INC.

Michael A. Bonarti,
Vice President, General Counsel and Secretary

09-11

© 2011 Automatic Data Processing, Inc.

## Ownership Schedule

If you have items which you believe are not subject to the non-disclosure agreement between you and Automatic Data Processing, Inc., please complete the following, which shall constitute the "Ownership Schedule" contemplated by Section 2(f) the non-disclosure agreement.

Instructions:

1) Electronically acknowledge this agreement.
2) Print out the agreement and this Ownership Schedule
3) List the items which you believe are not subject to this agreement below
4) During your first day of employment, fax Items 1 and 2 to:
    ADP HR and Payroll Resource Center
    973-422-4325

Name: _____

ADP Associate ID*: _____

Date: _____

*You will receive instructions on your first day as to how to retrieve your associate ID.

Item 1) _____

Item 2) _____

Item 3) _____

© 2011 Automatic Data Processing, Inc.

**Task Description:**
9400 - Sales Rep Agreement

**Requisition:**
41147

**New Hire:**
Payne,Rob

# Sales Representative Agreement

Please click here to review the ADP Sales Representative Agreement. Please agree and acknowledge below. This must be completed prior to your actual start with ADP.

**I acknowledge and agree to the terms of the Sales Representative Agreement. :**
Yes

Generated by ADP VirtualEdge

12/13/2011 - 01:13 PM

**EXHIBIT B**

**Automatic Data Processing, Inc.**
One ADP Boulevard
Roseland, New Jersey 07068

For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, I agree with you that:

1.  (a)  During and at any time after my employment with Automatic Data Processing, Inc. and/or any of its divisions, subsidiaries and affiliates (collectively "ADP"), I shall not, except in connection with my duties as an ADP employee, on my behalf or on behalf of any other person, corporation, partnership or other entity whatsoever (each, a "Person"), access, use, or disclose to any Person any confidential information, trade secrets, or other proprietary information of ADP, its vendors, licensors, marketing partners, business partners, or clients (including, but not limited to, (i) ADP's business methods, procedures, pricing and marketing structure and strategy which are not publicly available and which I did not learn from a public source, (ii) ADP's source and object codes, computer screens, programs and forms, experimental or research work, methods, processes, formulas, or drawings, (iii) the names, addresses and business activities of ADP's current, former and prospective clients, and (iv) the names, addresses, and personal information of ADP's and ADP's current, former, and prospective clients' employees), learned by me at any time during my employment with ADP (collectively, the "ADP Information").

    (b)  Upon ceasing to be an ADP employee, I shall immediately return all documents and electronically stored information containing ADP Information (including all copies thereof), whether or not such materials were prepared by ADP, me or another Person, and which are in my possession or over which I exercise any control.

2.  I understand and acknowledge that ADP shall have exclusive rights to anything related to ADP's actual or prospective business which I conceive or work on, either in whole or in part, while employed by ADP and that all such work product is hereby assigned to ADP and, if copyrightable, shall be property of ADP as "works for hire" under federal copyright law. I further understand and acknowledge that such work product may also constitute ADP confidential and proprietary information. Accordingly, I:

    (a)  shall promptly and fully disclose all such items to ADP and will not disclose such items to any other person or entity (other than employees of ADP authorized to review such information), without ADP's prior consent;

    (b)  shall maintain on ADP's behalf and surrender to ADP upon ceasing to be an ADP employee all written records regarding all such items;

    (c)  shall, but without personal expense, fully cooperate with ADP and execute all papers and perform all acts requested by ADP to establish, confirm or protect its exclusive rights in such items or to enable it to transfer legal title to such items, together with any patents, copyrights, trademarks, service marks and/or trade names that may be applied for and/or issued;

    (d)  shall, but without personal expense, provide such information and true testimony as ADP may request regarding such items including, without limitation, items which I neither conceived nor worked on but regarding which I have knowledge because of my employment by ADP;

    (e)  hereby assign to ADP, its successors and assigns, exclusive right, title and interest in and to all such items including, without limitation, any patents, copyrights, trademarks, service marks and/or trade names which have been, or may be, issued; and

    (f)  state that only such items in which I personally hold or claim an interest and which are not subject to this Agreement are listed on the Ownership Schedule attached hereto.  The absence of an Ownership Schedule, or the absence of any disclosure on such Ownership Schedule, means that no such items exist.

3.  (a)  During the period that I am an ADP employee, I shall not (except in connection with my duties as an ADP employee), on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that is a client, bona fide prospective client, marketing partner or business partner of ADP to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP at any time during my employment.

    (b)  During the period commencing on the date I cease to be an ADP employee for any reason whatsoever (such date, being the "Termination Date") and ending on the date that is twelve months thereafter, I shall not, on my behalf or on behalf of any other Person, directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person that was a client, bona fide prospective client, marketing partner or business partner of ADP before the Termination Date to sell, market, license, lease or provide any software, product or service competitive or potentially competitive with any software, product or service sold, marketed, licensed, leased, provided or under development by ADP during the two-year period prior to my Termination Date, provided that the restrictions set forth in this paragraph 3(b) shall only apply to clients, bona fide prospective clients, marketing partners or business partners of businesses of ADP with which I was involved.

    (c)  For purposes of this agreement, the term "client" and "prospective client" shall include, without limitation, any Person to or for whom ADP provides or proposes to provide, as applicable, products or services, either directly or indirectly, whether as a vendor, subcontractor to another vendor or otherwise, and whether or not privity of contract exists between ADP and such Person.

© 2011 Automatic Data Processing, Inc.

4. During the period commencing on the date I become an ADP employee and ending on the date that is twelve months following my Termination Date, I will not, directly or indirectly, hire, contract with, solicit, or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year after the date such person ceases to be an ADP employee.

5. During my employment by ADP, I shall not accept any position (unless such position is to commence after my employment by ADP ceases), gratuities, compensation, reimbursement or funds, or their equivalent, from any Person engaged in any business in which ADP is engaged.

6. I acknowledge and agree that a violation of the foregoing covenants not to disclose, not to solicit and not to hire will cause irreparable injury to ADP. ADP shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to an injunction enjoining and restraining me from performing, and continuing in the performance of, any such violation.

7. I understand and agree that I am employed on an at-will basis. As an at-will employee, I understand and agree that either ADP or I can terminate our employment relationship at any time for any reason, with or without advance notice and with or without cause. I understand and agree that, although over the course of my employment, other terms and conditions of my employment may change, the at-will term of my employment will not change. I understand that no one other than the Chief Executive Officer of ADP may enter into any agreement with me contrary to the foregoing and that any such contrary agreement must be in writing and signed by the Chief Executive Officer.

8. My obligations under this agreement shall be binding upon me regardless of which office(s) of ADP I am employed at or position(s) I hold and shall inure to the benefit of any successors or assigns of ADP. This agreement supplements and does not supersede any prior agreements(s) on the subject matter addressed herein.

9. If any provision of this agreement is invalid or unenforceable, the balance of this agreement shall remain in effect, and if any provision is inapplicable to any Person or circumstance it shall nevertheless remain applicable to all other Persons and circumstances. This agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey applicable to contacts made and to be performed entirely within such State. I acknowledge that the terms of this agreement are reasonable and that I have had a reasonable opportunity to consult with an attorney before agreeing to the terms of this agreement.

10. All notices shall be sent to the parties by certified or registered mail at the addresses set forth herein, Attention, in the case of ADP, Vice President, Human Resources, or to any changed address which may be given in writing hereafter. All notices to ADP shall also include a copy to ADP at One ADP Boulevard, Roseland, New Jersey 07068, Attention: General Counsel.

AUTOMATIC DATA PROCESSING, INC.

Michael A. Bonarti,
Vice President, General Counsel and Secretary

© 2011 Automatic Data Processing, Inc.

## Ownership Schedule

If you have items which you believe are not subject to the non-disclosure agreement between you and Automatic Data Processing, Inc., please complete the following, which shall constitute the "Ownership Schedule" contemplated by Section 2(f) the non-disclosure agreement.

Instructions:

1)    Electronically acknowledge this agreement.
2)    Print out the agreement and this Ownership Schedule
3)    List the items which you believe are not subject to this agreement below
4)    During your first day of employment, fax Items 1 and 2 to:
          ADP HR and Payroll Resource Center
          973-422-4325

Name:_____

ADP Associate ID*:_____

Date:_____

*You will receive instructions on your first day as to how to retrieve your associate ID.

Item 1)_____

Item 2)_____

Item 3)_____

© 2011 Automatic Data Processing, Inc.

| **Task Description:** | **Requisition:** | **New Hire:** |
|---|---|---|
| 9200 - Non-Disclosure Agreement | 41147 | Payne,Rob |

# Non-Disclosure Agreement

Please click here to review the ADP Non-Disclosure agreement. Please agree and acknowledge below. This must be completed prior to your actual start with ADP.

**I acknowledge and agree to the terms of the Non-Disclosure Agreement. :**
Yes

Generated by ADP VirtualEdge                                              12/13/2011 - 01:15 PM

**EXHIBIT C**

[Award Acceptance Document 2 of 2]



September 2, 2014

## RESTRICTIVE COVENANT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to ADP's Confidential Information, proprietary information, and trade secrets about ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Vendors, and employees, the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of ADP's proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of its proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my inclusion in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

### 1.   Definitions.

a.        **"Business of ADP"**   ADP is a global provider of (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, (ii) practice management and electronic health records software to medical service providers and other third parties, and outsourced medical billing solutions, and (iii) technology based solutions and other products and services (including, without limitation, integrated dealer management systems, digital marketing solutions and other business management solutions) to auto, truck, motorcycle, marine, recreational vehicle, heavy equipment, and other motor vehicle manufacturers, distributors, and retailers. ADP also provides workers compensation and health insurance in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions. ADP also provides data-driven business intelligence on issues in human capital management, employment, and workforce trends.

b.        **"Business Partners"**   means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and

    © 2014 Automatic Data Processing, Inc.

development partners, (iii) co-investors and joint venture partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

      c.      **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity for whom ADP provided or provides products or services in connection with the Business of ADP or whom ADP has actively solicited in connection with the Business of ADP.

      d.      **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, the Business of ADP for that part of the business in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

      e.      **"Confidential Information"** means information and the compilation of information known by me because of my employment at ADP that is created, compiled, or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, and services; research and development of ADP products and services; ADP's intellectual property; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; and technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business. Confidential Information shall also include any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) which I understand that ADP is reasonably obliged to treat as confidential. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

      f.      **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

      g.      **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

      h.      **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

 © 2014 Automatic Data Processing, Inc.

i.  **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

2.  **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities.

3.  **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use or disclose ADP's trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

4.  **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

a.  **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services that are the same as or substantially similar to those provided in the Business of ADP, for any Client: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP and with whom ADP reasonably expects business within the two (2) year period following my termination of employment from ADP; (iii) whom ADP has actively solicited in connection with the Business of ADP within the two (2) year period prior to my termination of employment from ADP; or (iv) about whom I have any trade secret information. I also agree that I will not wrongfully induce or encourage or attempt to wrongfully induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

b.  **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner to provide to me or any Competing Business any product or service that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP. This provision applies only to any Business Partner: (i) whom ADP currently has a commercial or business relationship with ADP in connection with the Business of ADP; (ii) whom ADP has had a commercial or business relationship in connection with the Business of ADP and with whom ADP reasonably expects business within the two (2) year period following my termination of employment from ADP; (iii) whom ADP has actively solicited for a commercial or business relationship in connection with the Business of ADP within the two (2) year period prior to my termination of employment from ADP; or (iv) about whom I have any trade secret information. I also agree that I will not wrongfully induce or encourage or attempt to wrongfully induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

c.  **Vendors:** I agree that I will not wrongfully induce or encourage or attempt to wrongfully induce or encourage any Vendor to cease doing business with ADP or materially alter their business relationship with ADP.

 © 2014 Automatic Data Processing, Inc.

**5.** **Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date.

**6.** **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary, in order to prevent any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether particular information is Confidential Information or a trade secret before using or disclosing such information. I also agree to immediately return to ADP all property belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep or distribute any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook.

**7.** **Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, fees, expenses, and damages arising out of my failure to comply with this paragraph.

**8.** **Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**9.** **Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction. I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**10.     Survival.** All non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**11.     Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled to injunctive relief. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me, or any of my agents, heirs, or assigns. I agree that if ADP substantially prevails in any litigation arising out of or relating to this Agreement (including, without limitation, paragraph nine (9) above), ADP shall be entitled to recovery of its reasonable attorneys' fees and associated costs, in addition to any other relief mentioned above. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP.

**12.     Tolling.** The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.     Entire Agreement and Validity of Terms.** I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**14.     Electronic Signature.** I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**15.     Assignment and Successorship.** This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest. This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**16.     Waiver.** The waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

17.     **Legal Counsel.**  I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document close this window to continue the grant acceptance process.

GP176LT8
09/01/2016 12:07 pm U.S. Eastern Standard Time
ACCEPTED

**EXHIBIT D**

## [1]RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to ADP's Confidential Information, proprietary information, and trade secrets about ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Vendors, and employees, the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of ADP's proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of its proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my inclusion in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

1.     **Definitions.**

   a.     **"Business of ADP"** ADP is a global provider of (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, and (ii) practice management and electronic health records software to medical service providers and other third parties, and outsourced medical billing solutions. ADP also provides workers compensation and health insurance in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions. ADP also provides data-driven business intelligence on issues in human capital management, employment, and workforce trends.

   b.     **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

   c.     **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity for whom ADP provided or provides products or services in connection with the Business of ADP or whom ADP has actively solicited in connection with the Business of ADP.

---
[1] S

3

**d.**     **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, the Business of ADP for that part of the business in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

**e.**     **"Confidential Information"** means information and the compilation of information known by me because of my employment at ADP that is created, compiled, received, or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets, Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information and employee training information and practices; Personally Identifiable information; and Protected Health Information.     Confidential Information shall also include any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) which I understand that ADP is reasonably obliged to treat as confidential. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

**f.**     **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

**g.**     **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

**h.**     **"Personally Identifiable Information"("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax I.D. number, social insurance number, driver's license number, state issued identification card number, financial information, healthcare information, or credit or debit card number.

**i.**     **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

**j.**     **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

4

    **k.** "**Vendors**" means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.**     **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities.

**3.**     **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use or disclose ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4.**     **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

    **a.**     **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services that are the same as or substantially similar to those provided in the Business of ADP, for any Client: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom ADP has provided products or services in connection with the Business of ADP and with whom ADP reasonably expects business within the two (2) year period following my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iv) whom ADP has solicited in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (v) about whom I have any Confidential Information or trade secret information. I also agree that I will not wrongfully induce or encourage or attempt to wrongfully induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

    **b.**     **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner to provide to me or any Competing Business any product or service that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP. This provision applies only to any Business Partner: (i) whom ADP currently has a commercial or business relationship with ADP in connection with the Business of ADP; (ii) whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause from ADP; (iii) whom ADP has had a commercial or business relationship in connection with the Business of ADP and with whom ADP reasonably expects business within the two (2) year period following my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iv) whom ADP has actively solicited for a commercial or business relationship in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (v) about whom I have any Confidential Information or trade secret information. I also agree that I will not wrongfully induce or

encourage or attempt to wrongfully induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

   c. **Vendors:** I agree that I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP or materially alter their business relationship with ADP.

**5.** **Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date.

**6.** **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary, in order to prevent any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information. I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep or distribute any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook. This shall include deleting any business related connections or contacts, including all ADP employees, representatives and agents, as well as all contacts at ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP.

**7.** **Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**8.** **Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**9.**     **Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction. I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**10.**     **Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that the Company or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**11.**     **Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me, or any of my agents, heirs, or assigns. I agree that if ADP substantially prevails in any litigation arising out of or relating to this Agreement ADP shall be entitled to recovery of its reasonable attorneys' fees and associated costs, in addition to any other relief mentioned above. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP.

**12.**     **Tolling.** The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.**     **Entire Agreement and Validity of Terms.** I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

7

**14.**    **Electronic Signature.**  I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**15.**    **Assignment and Successorship.**  This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest.  This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**16.**    **Waiver.**  ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement.  ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me.  Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**17.**    **Jury Trial Waiver.**  I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**18.**    **Opportunity to Review.**  I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document close this window to continue the grant acceptance process.

**GP176IKF**

**09/01/2016 12:06 pm U.S. Eastern Standard Time**

**ACCEPTED**

8

**EXHIBIT E**

[Award Acceptance Document 2 of 2]



09/01/2017

## RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my participation in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

1. **Definitions.**

    a. **"Business of ADP"** means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on issues in human capital management, employment, and workforce trends.

    b. **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture

partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

      c.     **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

      d.     **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

      e.     **"Confidential Information"** means information and the compilation of information known or possessed by me because of my employment at ADP that is created, compiled, received or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information.    Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

      f.     **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

      g.     **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

{6883400:}

**h.** **"Personally Identifiable Information" ("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

**i.** **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

**j.** **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

**k.** **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.** **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**3.** **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4.** **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

**a.** **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services within the United States of America that are the same as or substantially similar to those provided in the Business of ADP. I also agree that I will not induce or encourage or attempt to induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

**b.** **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner for the purpose of providing to me or any Competing Business any product or service within the United States of America that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP. This

3

provision applies only to a Business Partner: (i) with whom ADP currently has a commercial or business relationship in connection with the Business of ADP; (ii) with whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iii) about whom I have any Confidential Information or trade secret information.   I also agree that I will not induce or encourage or attempt to induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

      **c.**    **Vendors:**  I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**5.**    **Non-Solicitation of Employees.**  I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date.  This restriction shall only apply to ADP employees located within the United States of America.

**6.**    **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.**  During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret.  I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information.  I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same.  I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing.  I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook.  This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP.  Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

**7.**    **Prior Agreements and Disclosure of Agreement to Third Parties.**  I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect

4

my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**8.      Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**9.      Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction. I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**10.      Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**11.      Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me or to which I provide services, or any of my agents, heirs, or assigns. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP. I further agree to pay any and all legal fees, including without limitation, all

5

attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**12.     Tolling.**  The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain.  This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.     Cooperation.**  During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring service of a subpoena or other legal process, volunteering to provide ADP all pertinent information and turning over to ADP all relevant documents which are or may come into my possession, all at times and on schedules that are reasonably consistent with my other permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**14.     Entire Agreement and Validity of Terms.**  I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**15.     Electronic Signature.**  I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**16.     Assignment and Successorship.**  This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest.  This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**17.     Waiver.**  ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement.  ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me.  Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**18.     Jury Trial Waiver.**  I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**19.     Opportunity to Review.**  I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document, close this window to continue the grant acceptance process.

HRU7WGED

10/02/2017 01:27 PM U.S. Eastern Standard Time

ACCEPTED

[Award Acceptance Document 2 of 2]



09/01/2017

## RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as a Sales Compensated Associate who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment with ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, my participation in ADP's 2008 Omnibus Award Plan, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

1.    **Definitions.**

a.    **"Business of ADP"** means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on issues in human capital management, employment, and workforce trends.

b.    **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture

partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

      c.     **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

      d.     **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

      e.     **"Confidential Information"** means information and the compilation of information known or possessed by me because of my employment at ADP that is created, compiled, received or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients,. Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information.     Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential.  This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act.  This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

      f.     **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

      g.     **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

{6883400:}

**h.** **"Personally Identifiable Information" ("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

**i.** **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

**j.** **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

**k.** **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.** **Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**3.** **Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**4.** **Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

**a.** **Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client for the purposes of providing products or services within the United States of America that are the same as or substantially similar to those provided in the Business of ADP. I also agree that I will not induce or encourage or attempt to induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

**b.** **Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner for the purpose of providing to me or any Competing Business any product or service within the United States of America that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP. This

3

provision applies only to a Business Partner: (i) with whom ADP currently has a commercial or business relationship in connection with the Business of ADP; (ii) with whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iii) about whom I have any Confidential Information or trade secret information.    I also agree that I will not induce or encourage or attempt to induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

      **c.**    **Vendors:**  I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**5.**    **Non-Solicitation of Employees.**  I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date.  This restriction shall only apply to ADP employees located within the United States of America.

**6.**    **Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.**  During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information. I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook.  This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP.  Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

**7.**    **Prior Agreements and Disclosure of Agreement to Third Parties.**  I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect

4

my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing. I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**8.      Severability and Reformation.**  I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**9.      Choice of Law, Venue, and Jurisdiction.**  The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction.  I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey.  I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey.  I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**10.     Survival.**  I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures.  Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties.  However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**11.     Relief, Remedies, and Enforcement.**  I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment.  I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement.  I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me or to which I provide services, or any of my agents, heirs, or assigns.  I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP.  I further agree to pay any and all legal fees, including without limitation, all

attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**12.    Tolling.**  The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**13.    Cooperation.**  During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring service of a subpoena or other legal process, volunteering to provide ADP all pertinent information and turning over to ADP all relevant documents which are or may come into my possession, all at times and on schedules that are reasonably consistent with my other permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**14.    Entire Agreement and Validity of Terms.**  I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**15.    Electronic Signature.**  I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.

**16.    Assignment and Successorship.**  This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest. This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**17.    Waiver.**  ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement. ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me. Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**18.    Jury Trial Waiver.**  I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**19.    Opportunity to Review.**  I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document, close this window to continue the grant acceptance process.

6

{6883400:}

HRU7WBAO

10/02/2017 01:26 PM U.S. Eastern Standard Time

ACCEPTED

{6883400:}

**EXHIBIT F**

[Award Acceptance Document 2 of 2]



09/01/2018

### RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP") as an employee who enjoys substantial compensation and benefits from ADP, including participation in its 2008 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my initial or continuing employment, my participation in the 2008 Omnibus Award Plan and the receipt by me of valuable restricted stock in ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

{7565326:2 }

**1.   Definitions.**

   a.   **"Business of ADP"**   means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on issues in human capital management, employment, and workforce trends.

   b.   **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients).

   c.   **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

   d.   **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

   e.   **"Confidential Information"** means information and the compilation of information known or possessed by me because of my employment at ADP that is created, compiled, received or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including

contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, employee compensation, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information.    Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential.  This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act.  This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

      **f.**    **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

      **g.**    **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

      **h.**    **"Personally Identifiable Information"** **("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following:  an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

      **i.**    **"Protected Health Information"** **("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

      **j.**    **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

      **k.**    **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.     Consideration and Effective Date**. I acknowledge that in exchange for my participation in the 2008 Omnibus Award Plan and the receipt by me of valuable restricted stock I am agreeing to the restrictions contained in this Restrictive Covenant Agreement. I acknowledge this consideration is fair and reasonable. The restrictions in this Restrictive Covenant Agreement shall be effective 10 business days after I accept this agreement.

**3.     Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided to ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**4.     Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where doing so will require me to (i) provide the same or substantially similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after my voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**5.     Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

　　　　**a.     Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client: (i) to whom ADP provides products or services and is located in a state in which I have performed services for ADP during the two (2) year period prior the termination of my employment with ADP, (ii) to whom ADP has provided products or services within the one (1) year period prior to the termination of my employment with ADP and is located in a state in which I have performed services for ADP during the two (2) year period prior to the termination of my employment from ADP, (iii) whom I have solicited or contacted on behalf of ADP within the two (2) year period prior to the termination of my employment with ADP, or (iv) about whom I have any confidential, proprietary or trade secret information. I also agree that I will not induce or encourage or attempt to induce or encourage any Clients to cease doing business with ADP or materially alter their business relationship with ADP.

**b.      Business Partners:**  I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly engage, contract with, solicit, divert, appropriate or accept any business from, or attempt to engage, contract with, solicit, divert, appropriate or accept any business from any Business Partner for the purpose of providing to me or any Competing Business any product or service within the United States of America that is (a) the same as or substantially similar to the product or service provided to ADP and which ADP uses for, uses for obtaining, or distributes to, its Clients or (b) specialized, customized or designed by the Business Partner for ADP.  This provision applies only to a Business Partner: (i) with whom ADP currently has a commercial or business relationship in connection with the Business of ADP; (ii) with whom ADP has had a commercial or business relationship in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iii) about whom I have any Confidential Information or trade secret information.   I also agree that I will not induce or encourage or attempt to induce or encourage any Business Partner to cease doing business with ADP or materially alter their business relationship with ADP.

**c.      Vendors:**  I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**6.      Non-Solicitation of Employees.**  I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date.  This restriction shall only apply to ADP employees located within the United States of America.

**7.      Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.**  During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason and with or without cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information.  I understand, however, that nothing in this Restrictive Covenant Agreement prohibits me from reporting possible violations of federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same.  I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's ociation, or other entity, regardless of form, andess of whether it is in paper, electronic, or other form), form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud

storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing.  I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook.  This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP. Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

**8.** **Prior Agreements and Disclosure of Agreement to Third Parties.** I represent that I am not a party to any agreement with any former employer or any other person or entity containing any non-disclosure, non-compete, non-solicitation, non-recruitment, intellectual property assignment, or other covenants that will affect my ability to devote my full time and attention to the Business of ADP that has not already been disclosed to ADP in writing.  I also agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide prior to engaging in any such activities.  I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**9.** **Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

**10.** **Choice of Law, Venue, and Jurisdiction.** The interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles that require the application of the law of another jurisdiction, to the extent permitted by the law.  I agree that any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey, to the extent permitted by law.  I also agree that any action by ADP to enforce this Agreement,

as well as any related disputes or litigation related to this Agreement, may, but do not have to, be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**11.** **Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs three (3) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**12.** **Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me or to which I provide services, or any of my agents, heirs, or assigns. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs three (3) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP. I further agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**13.** **Tolling.** The restricted time periods in paragraphs three (3) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants and a court has declined to enjoin such conduct or I have failed to comply with any such injunction.

**14. Cooperation**. During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring service of a subpoena or other legal process, volunteering to provide ADP all pertinent information and turning over to ADP all relevant documents which are or may come into my possession, all at times and on schedules that are reasonably consistent with my other permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**15. Entire Agreement and Validity of Terms.** I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties. I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**16. Electronic Signature.** I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature. I agree that my electronic signature, including my acceptance of this agreement via a website is, is a valid signature by me.

**17. Assignment and Successorship.** This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest. This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**18. Waiver.** ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement. ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me. Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**19. Jury Trial Waiver.** I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**20. Opportunity to Review.** I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document, close this window to continue the grant acceptance process.

**IPP6049U**

**09/25/2018 10:08 AM U.S. Eastern Standard Time**

**ACCEPTED**

# EXHIBIT G

[Award Acceptance Document 2 of 2]



Award Date: **04/14/2021**

## RESTRICTIVE COVENANT AGREEMENT

I am currently employed by Automatic Data Processing, Inc., or one of its subsidiaries or affiliated companies (collectively, "ADP"), as an employee who enjoys substantial compensation and benefits from ADP, including participation in its 2018 Omnibus Award Plan, and as an ADP employee, I have had and will have access to Confidential Information, proprietary information, and trade secrets about the Business of ADP, ADP's operations, systems, techniques, software, and processes, its Clients, Business Partners, Vendors, and other unique trade and business methods, all of which are valuable assets of ADP that are developed at great effort and expense to ADP. I also have had or will have significant contact with ADP's current and prospective Clients, Business Partners, and/or Vendors in order to develop ADP's goodwill and client relations so that I can promote ADP's interests and objectives, and I understand that ADP has invested and will invest a significant amount of time and financial resources to develop my skills to assist me in performing my job duties for ADP. While these current and prospective Clients, Business Partners, and/or Vendors may be secured or serviced by ADP associates, including me, I acknowledge that such individuals or entities remain at all times those of ADP and that the goodwill engendered by the relationships is intended to inure only to the benefit of ADP; the goodwill is owned by ADP; and ADP shall be the sole beneficiary of such goodwill during and after the termination of my employment with ADP.

I understand that ADP is a profit-generating business operating in a highly competitive business environment and that it has a valid interest in protecting its valuable assets, including its Confidential Information, proprietary information and trade secrets, its goodwill and business relationships with its Clients, Business Partners, Vendors, and employees, and the specialized training of its employees, and I recognize that my use of ADP's valuable assets, directly or indirectly, against or in competition with ADP, during and after my employment, will result in irreparable harm to ADP. Accordingly, I understand that this Agreement is meant to limit reasonably and fairly my competition during my employment and following the end of my employment, and to define the corresponding obligations between me and ADP regarding: (1) unfair competition, (2) the solicitation of Clients, Business Partners or Vendors for or on behalf of ADP's competitors, (3) the solicitation of ADP's employees, and (4) the treatment of proprietary information, Confidential Information, and trade secrets.

**NOW, THEREFORE,** in consideration of my continuing employment, my participation in the 2018 Omnibus Award Plan and the receipt by me of valuable stock in ADP, ADP's disclosure to me of proprietary information, Confidential Information, and trade secrets to allow me to perform my duties for ADP, the mutual benefits conferred herein, and for other good and valuable consideration (the receipt and sufficiency of all of which I hereby acknowledge), I agree as follows:

## 1.    Definitions.

    **a.**    **"Business of ADP"** means the following businesses or services: (i) business outsourcing and human capital management solutions, including, without limitation, human resource, payroll, time, attendance and labor management, pre-employment, talent management, compliance and payment

{8936845:3 }

solutions, tax and benefits and retirement administration solutions and employment administration outsourcing solutions, which ADP provides globally; (ii) workers compensation and health insurance, which ADP provides in the United States and Canada through its licensed insurance agencies and consulting services relating to its business outsourcing and human capital management solutions; and (iii) data-driven business intelligence on issues in human capital management, employment, and workforce trends.

      **b.**      **"Business Partners"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees and agents, that is or has been in a commercial or business relationship with ADP (excluding Clients and Vendors), including, without limitation, (i) referral sources or partners, resellers, brokers, distributors, licensees, franchisees and marketing partners, (ii) implementation, integration and development partners, (iii) co-investors and joint venture partners, and (iv) any other individual or entity whose products or services ADP purchases, acquires or licenses for use with, or redistribution to, a third party (including Clients). Business Partners under this Agreement are not limited to individuals or entities that have exclusive relationships and/or contractual relationships with ADP.

      **c.**      **"Clients"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, and their employees or agents, or government or quasi-government entity, and their employees or agents, for: (i) whom ADP provides products or services in connection with the Business of ADP; (ii) whom ADP has provided products or services in connection with the Business of ADP within the one (1) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; (iii) whom I have solicited, contacted, called upon, communicated with, or attempted to communicate with on behalf of ADP in connection with the Business of ADP within the two (2) year period prior to my voluntary or involuntary termination of employment, for any reason, with or without cause, from ADP; or (iv) about whom I have any Confidential Information or trade secret information.

      **d.**      **"Competing Business"** means any individual (including me), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which I have worked or to which I have been exposed during the last two years of my employment with ADP (regardless of whether I worked only for a particular segment of that part of the business in which I worked—for example, business segments based on the number of employees a Client has or a particular class of business using an ADP product or service).

      **e.**      **"Confidential Information"** means information, or any compilation of information, known or possessed by me because of my employment at ADP that is created, compiled, received, or gathered by ADP or its agents and is related to the Business of ADP, that is valuable to ADP, and which ADP endeavors to protect from disclosure or use by its competitors and others who could benefit from its use, whether in written, tangible, electronic or any other form or media. Assuming the foregoing criteria are met, Confidential Information includes but is not limited to information about: ADP's operations, products, business plans, market strategies, and services; research and development of ADP products and services; ADP's intellectual property and trade secrets; Creative Works, including all publications, products, applications, processes, and software in any stage of development; names and other listings of current or prospective Clients, Business Partners, and Vendors (including contact information that may be compiled in computer databases that are not owned or controlled by ADP such as address books, personal digital assistants, smart phones, cloud storage services, and social and business websites); proposals made to current or prospective Clients, Business Partners, and Vendors or

other information contained in offers or proposals to such Clients, Business Partners, and Vendors; the terms of any arrangements or agreements with Clients, Business Partners, and Vendors, including the amounts paid for such services or how pricing was developed by ADP, the implementation of Client-specific projects, the identity of Business Partners and Vendors, and Business Partner and Vendor pricing information, the composition or description of future services that are or may be provided by ADP; ADP's financial, marketing, and sales information; technical expertise and know-how developed by ADP, including the unique manner in which ADP conducts its business; employee lists, employee capabilities, confidential personnel information, prospective employee information, and employee training information and practices; Personally Identifiable Information; and Protected Health Information. Confidential Information also includes any information disclosed to ADP by a third party (including, without limitation, current or prospective Clients, Business Partners, and Vendors) that ADP is obliged to treat as confidential. Confidential Information does not need to be marked in any way to identify it as Confidential Information and does not lose its status as Confidential Information because similar information may be so marked while other Confidential Information is not. This definition of Confidential Information excludes information that is or becomes known or generally available in the public domain through lawful means, other than through my act or failure to act. This definition of Confidential Information and the use of the term Confidential Information in this Agreement are not meant to limit ADP's rights under applicable trade secrets laws, and ADP specifically reserves all of its rights under all applicable laws concerning trade secrets.

f.     **"Creative Works"** means any and all works of authorship including, for example, written documents, spreadsheets, graphics, designs, trademarks, service marks, algorithms, computer programs or code, protocols, formulas, mask works, brochures, presentations, photographs, music or compositions, manuals, reports, and compilations of various elements, whether or not patentable or registrable under copyright, trademark, or similar domestic and international laws.

g.     **"Material Business Contact"** means contact that is intended to establish or strengthen a business relationship for ADP.

h.     **"Personally Identifiable Information" ("PII")** is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax identification number, social insurance number, driver's license number, government-issued identification card number, financial or bank account information, healthcare information, or credit, debit or payroll card number.

i.     **"Protected Health Information" ("PHI")** is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

j.     **"Territory"** means the geographic area where I worked, represented ADP, or had Material Business Contact with ADP's Clients in the two (2) year period preceding the termination of my employment with ADP.

k.     **"Vendors"** means any individual, corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, or government entity that supplies materials or services to ADP for internal use.

**2.     Consideration and Effective Date**. I acknowledge that in exchange for my participation in the 2018 Omnibus Award Plan and the receipt by me of valuable stock I am agreeing to the restrictions

{8936845:3 }                                    3

contained in this Restrictive Covenant Agreement. I acknowledge this consideration is fair and reasonable. The restrictions in this Restrictive Covenant Agreement shall be effective 10 business days after I accept this agreement and are not a condition of my continued employment by ADP.

**3.     Duties and Best Efforts.** I agree to provide to ADP and its Clients services related to the Business of ADP, as directed by ADP in its sole discretion. During employment, I agree to devote my full time and best efforts to ADP, not to provide to ADP's Clients or ADP's competitors the same or similar services or products as those provided by ADP other than on behalf of ADP, and not to engage in any other employment, consultant, or advisory relationship that is the same as, similar to, or related to my duties with ADP or the Business of ADP or that otherwise creates a conflict of interest with ADP. I also agree that I am prohibited from accessing any of ADP's Confidential Information, computer systems, servers, drives, or databases for any competitive or conflicting purpose and that any authorization for such access is revoked and prohibited by ADP once I engage in any competitive or conflicting activities or take any material steps towards accomplishing any competitive or conflicting activities. I further agree to not make any false or misleading statements regarding ADP or its products or services, and agree to not make any false or misleading statements or take action to mislead ADP regarding clients, prospective clients, business partners, or vendors, including falsifying documents.

**4.     Non-Competition.** I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where I (i) will provide the same or similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after the voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

**5.     Non-Solicitation of and Non-Interference with Clients, Business Partners, and Vendors.**

        **a.     Clients:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Client, for the purpose of selling products or services that compete with the Business of ADP: (i) whom I have solicited or contacted on behalf of ADP within the two (2) year period prior to the termination of my employment with ADP, or (ii) about whom I have learned or been provided any confidential, proprietary or trade secret information during my employment with ADP.

        **b.     Business Partners:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, either on my own behalf or for any Competing Business, directly or indirectly, solicit, divert, appropriate, or accept any business from, or attempt to solicit, divert, appropriate, or accept any business from any Business Partner: (i) whom I have solicited or contacted on behalf of ADP within the two (2) year period prior to the termination of my employment with ADP, or (ii) about whom I have learned or been provided any confidential, proprietary or trade secret information during my employment with ADP.

**c.   Vendors:** I agree that during my employment and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not induce or encourage or attempt to induce or encourage any Vendor to cease doing business with ADP within the United States of America or materially alter their business relationship with ADP within the United States of America.

**6.   Non-Solicitation of Employees.** I agree that during my employment with ADP and for a period of twelve (12) months following the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, directly or indirectly, hire, solicit, recruit, or encourage to leave ADP, any current employees of ADP or hire, solicit, recruit, or contract with employees who terminate their employment with ADP within twelve (12) months following my termination date. This restriction shall only apply to ADP employees located within the United States of America.

**7.   Non-Disclosure and Non-Use of Confidential Information and Trade Secrets.** During my employment, except as authorized and required to perform my duties for ADP, and after the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or trade secrets or take any action causing, or fail to take any action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a trade secret. I agree to inquire with ADP if I have any questions about whether I am authorized or required to access, disclose, use, reproduce, distribute, or otherwise disseminate ADP's Confidential Information or whether particular information is Confidential Information or a trade secret before accessing, using or disclosing such information. I also agree to immediately return to ADP all property and information belonging to ADP such as keys, credit cards, telephones, tools, equipment, computers, passwords, access codes, pin numbers, and electronic storage devices, as well as all originals, copies, or other physical embodiments of ADP's Confidential Information or trade secrets (regardless of whether it is in paper, electronic, or other form), including any such information in any programs, business forms, manuals, correspondence, files, databases, or on computer disks or any other storage medium, including but not limited to cloud storage, whether or not owned or controlled by me or ADP (e.g., social and business networking websites, web-based email servers, Notability, or cloud storage services), immediately upon termination of my employment or upon any earlier request by ADP, and I agree not to keep, access, disclose, use, reproduce, distribute, or otherwise disseminate any copies, electronic or otherwise, of any of the foregoing. I also understand that my obligations under this paragraph, as well as the other covenants in this Agreement, extend to my activities on the internet, including my use of business oriented social networking sites such as LinkedIn and Facebook. This shall include deleting any business related connections or contacts, including all ADP Clients and Business Partners, that I inputted in or with whom I connected on any business oriented social networking sites, my LinkedIn account, any cloud storage, any electronic device, or any cell phones while employed at ADP.

I understand that nothing in this Agreement is intended to prohibit any non-supervisory employee's right to discuss wages, terms and conditions of employment, or other conduct protected by Section 7 of the National Labor Relations Act.

Pursuant to 18 U.S.C. § 1833(b), and as set forth fully therein, notice is hereby given that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly

or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

I understand that nothing in this Agreement prohibits me from reporting possible violations of state or federal law or regulation to any governmental agency or entity or from communicating with any such agency or entity regarding the same or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to ADP. This Agreement does not limit my right to receive an award for information provided to any government agencies. I understand that nothing in this Agreement shall have the purpose or effect of concealing details related to a claim of discrimination, retaliation, or harassment.

**8.      Prior Agreements and Disclosure of Agreement to Third Parties.** I agree to provide a copy of this Agreement to any subsequent employer, person, or entity to which I intend to provide services that may conflict with any of my obligations in this Agreement prior to engaging in any such activities and to provide ADP in writing the name and address of any such employer, person, or entity and a description of the services I intend to provide, including the territory in which I plan to work, prior to engaging in any such activities. I agree that ADP may also provide a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party at any time as it deems necessary to protect its interests, and I agree to indemnify ADP against any claims and hold ADP harmless from any losses, costs, attorneys' fees, expenses, fees, and damages arising out of my failure to comply with this paragraph or ADP's providing a copy of this Agreement or a description of its terms to any Client, subsequent employer, or other third party.

**9.      Severability and Reformation.** I agree if any particular paragraph, subparagraph, phrase, word, or other portion of this Agreement is determined by an appropriate court to be invalid or unenforceable as written, it shall be modified as necessary to be made valid or enforceable, and such modification shall not affect the remaining provisions of this Agreement, or if it cannot be modified to be made valid or enforceable, then it shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable. To the extent I live in a state that does not permit the application of New Jersey law to this Agreement, I understand that certain provisions, such as paragraph 4, may be modified or stricken from this Agreement so that this Agreement complies with the minimum requirements of a particular state's law. As it relates to the practice of law, this Restrictive Covenant Agreement should be interpreted consistent with the limitations imposed by the New Jersey Rules of Professional Conduct and/or the Model Rules of Professional Conduct (or similar rules in other jurisdictions), including RPCs 5.6, 1.9, and 1.6. If any provision in this Agreement causes the acknowledgment of the Agreement to violate any of the above-referenced RPCs as it relates to the practice of law, such provision(s) will be deemed void and severed from the Agreement.

**10.     Choice of Law, Venue, and Jurisdiction.** To the extent permitted by the law of the state in which I reside, the interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles. I agree that, to the extent permitted by the law of the state in which I reside, any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as

any related disputes or litigation related to this Agreement may be brought in the appropriate state or federal court located in the State of New Jersey. I agree and consent to the personal jurisdiction and venue of the federal or state courts of New Jersey for resolution of any disputes or litigation arising under or in connection with this Agreement or any challenge to this Agreement and waive any objections or defenses to personal jurisdiction or venue in any such proceeding before any such court.

**11.     Survival.** I acknowledge that my employment relationship with ADP is "terminable at will" by either party and that ADP or I can terminate the relationship with or without cause and without following any specific procedures. Nothing contained in this Agreement is intended to or shall be relied upon to alter the "terminable at will" relationship between the parties. However, all non-competition, non-solicitation, non-disclosure and non-use, non-recruiting, intellectual property, and Agreement disclosure obligations under paragraphs four (4) through seven (7) of this Agreement shall survive the voluntary or involuntary termination of my employment for any reason and with or without cause, and no dispute regarding any other provisions of this Agreement or regarding my employment or the termination of my employment shall prevent the operation and enforcement of these obligations.

**12.     Relief, Remedies, and Enforcement.** I acknowledge that ADP is engaged in a highly competitive business, and the covenants and restrictions contained in this Agreement, including the geographic and temporal restrictions, are reasonably designed to protect ADP's legitimate business interests, including ADP goodwill and client relations, Confidential Information and trade secrets, and the specialized skills and knowledge gained by me and ADP's other employees during our employment. I acknowledge and agree that a breach of any provision of this Agreement by me will cause serious and irreparable damage to ADP that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate. Accordingly, I agree that if ADP should bring an action to enforce its rights under this Agreement and ADP establishes that I have breached or threatened to breach any of my obligations under this Agreement, ADP shall be entitled, in addition to all remedies otherwise available in law or in equity, to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining such breach or threatened breach in any court of competent jurisdiction without the necessity of posting a surety bond, as well as an equitable accounting of all profits or benefits arising out of any violation of this Agreement. I also agree that nothing in this Agreement shall be construed to prohibit ADP from pursuing any and all other legal or equitable remedies available to it for breach of any of the provisions of this Agreement, including the disgorgement of any profits, bonuses, commissions, or fees realized by me, any subsequent employers, any business owned or operated by me or to which I provide services, or any of my agents, heirs, or assigns. I also agree that that the knowledge, skills, and abilities I possess at the time of commencement of my employment are sufficient to permit me to earn a livelihood satisfactory to me without violating any provision of paragraphs four (4) through seven (7) above, for example, by using such knowledge, skills, and abilities, or some of them, in the service of business that is not competitive with ADP. I further agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by ADP in enforcing this Agreement.

**13.     Tolling.** The restricted time periods in paragraphs four (4) through six (6) above shall be tolled during any time period that I am in violation of such covenants, as determined by a court of competent jurisdiction, so that ADP may realize the full benefit of its bargain. This tolling shall include any time period during which litigation is pending, but during which I have continued to violate such protective covenants.

**14.     Cooperation.** During my employment, I shall cooperate with ADP in any internal investigation or administrative, regulatory or judicial proceeding as reasonably requested by ADP (including, without

limitation, being available to ADP upon reasonable notice for interviews and factual investigations, appearing at ADP's request to give testimony without requiring  service of a subpoena or other legal process, volunteering to provide ADP all pertinent information  and turning over to ADP all relevant documents which are or may come into my  possession, all at times and on schedules that are reasonably consistent with my other   permitted activities and commitments). In the event ADP requires my cooperation in accordance with this Section, ADP shall reimburse me solely for reasonable travel expenses (including lodging and meals, upon submission of receipts).

**15.    Entire Agreement and Validity of Terms.**  I agree that I do not rely, and have not relied, upon any representation or statement not set forth herein by ADP or any of ADP's agents, representatives, or attorneys, and that this Agreement may be changed only by a subsequent agreement in writing signed by both parties.  I understand that I may have an existing agreement(s) with ADP, through acquisition of a prior employer or otherwise, that may include the same or similar covenants as those in this Agreement, and acknowledge that this Agreement is meant to supplement any such agreement(s) such that the covenants in the agreements that provide ADP with the greatest protection enforceable under applicable law shall control, and that the parties do not intend to create any ambiguity or conflict through the execution of this Agreement that would release me from the obligations I have assumed under the protective covenants in any of these agreements.

**16.    Electronic Signature.**  I agree that ADP may enforce this Agreement with a copy for which I have provided an electronic signature.  I agree that my electronic signature, including my acceptance of this agreement via a website is, is a valid signature by me.

**17.    Assignment and Successorship.**  This Agreement and ADP's rights and obligations hereunder may be assigned by ADP and shall inure to the benefit of and shall be enforceable by any such assignee, as well as any of ADP's successors in interest.  This Agreement and my rights and obligations may not be assigned by me, but are binding upon my heirs, administrators, executors, and personal representatives.

**18.    Waiver.**  ADP's waiver of a breach of any provision of this Agreement in any particular instance shall not be deemed to be a waiver of any other breach in any other instance and/or of ADP's other rights at law, in equity, or under this Agreement.  ADP's failure to take action against any other employee for similar breaches shall not operate as a wavier by ADP of a breach as to me.  Any waiver by ADP of any breach of this Agreement by me shall not be effective unless in writing signed by the President of ADP, and no such waiver with regards to me or any other person under a similar agreement shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion by me or any other person or entity.

**19.    Jury Trial Waiver.**  I agree that, to the fullest extent permitted by law, each party waives any right to trial by jury with respect to any proceeding arising out of or relating to this Agreement.

**20.    Opportunity to Review.**  I agree that I have read this Agreement before signing it, understand its terms, and that I have had the opportunity to have legal counsel review this Agreement, prior to signing it, and I acknowledge that I have not been forced or coerced in any manner to sign this Agreement and do so of my own free will.

After reviewing this document, close this window to continue the grant acceptance process.

{8936845:3 }                                        8

**LBU6MTVZ**

**04/26/2021 11:14 AM U.S. Eastern Standard Time**

**ACCEPTED**